UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN RE: STERLING UNITED, INC., a Corporation,

                          Debtor.

Case No. 1-13-11351-MJK
_____

JOHN H. RING, III, Trustee of the Chapter 7 Bankruptcy Estate of STERLING UNITED, INC.,

                          Plaintiff/Appellant,
     v.

FIRST NIAGARA BANK, N.A.,

                          Defendant/Appellee.

Adv. Pro. No. 1-14-01017-MJK

**DECISION AND ORDER**
14-MC-072S

## I. INTRODUCTION

The Chapter 7 Trustee commenced this adversary proceeding in March 2014 alleging, among other things, avoidable transfers by the debtor to Defendant First Niagara Bank. Presently before this Court is the Plaintiff Trustee's appeal from the October 3, 2014 Decision and Order of the Honorable Michael J. Kaplan, Bankruptcy Judge, which granted Defendant's motion for judgment on the pleadings and denied Plaintiff's cross-motion for summary judgment. See 28 U.S.C. § 158(a)(1).

## II. DISCUSSION

A district court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. See In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990), *cert denied*, 502 U.S. 808 (1991); In Re Lehman Brothers Holdings, Inc., No.

1

14-CV-8680 (VEC), 2015 WL 247403, at *2 (S.D.N.Y. Jan. 20, 2015).  Here, the parties do not dispute the factual and procedural history of this matter.  Plaintiff commenced this adversary proceeding in March 2014 seeking a money judgment related to certain avoidable transfers of monies or other property interests made by the Debtor to or on behalf of Defendant during the 90-day preference period preceding the commencement of the bankruptcy case, as well as any subsequently made transfer. Dispositive of the parties' motions is whether Defendant's UCC filings prior to the commencement of the 90-day preference period were sufficient to perfect an unlimited blanket security interest in all of the assets of the Debtor, or if the language used limited or would seriously mislead a subsequent creditor regarding the extent of Defendant's security interest.

At issue is the language used in Defendant's 2005-2007 UCC Financing Statements, which identified the covered collateral as follows:

> All assets of the Debtor including, but not limited to, any and all equipment, fixtures, inventory, accounts, chattel paper, documents, instruments, investment property, general intangibles, letter-of-credit rights and deposit accounts now owned and hereafter acquired by Debtor **and located at or relating to the operation of the premises at 100 River Rock Drive, Suite 304, Buffalo, New York**, together with any products and proceeds thereof including, but not limited to, a certain Komori 628 P+L Ten Color Press and Heidelberg B20 Folder and Prism Print Management System.

(Docket No. 6-4 (emphasis added).)

A financing statement is sufficient to perfect a security interest if it: "(1) provides the names of the debtor; (2) provides the name of the secured party or a representative of the secured party; [and] (3) indicates the collateral covered by the financing statement." N.Y. U.C.C. § 9-502(a).  Here, Plaintiff argues that the language highlighted above, "…and located at or relating to the operation of the premises at 100 River Rock

Drive …," limits Defendant's security interest to that collateral located at or related to the River Rock Drive premises, a location the Debtor no longer owns or operates from. Alternatively, Plaintiff asserts that the language is so ambiguous that a subsequent creditor would be misled into believing that the collateral was so limited.

Initially, the phrase "and located at or relating to the operation of the premises at 100 River Rock Drive" is included within, rather than set off from, the non-exhaustive list of collateral examples following the phrase "including, but not limited to." This Court therefore disagrees with Plaintiff that this reference to location "naturally modifies" the phrase "[a]ll assets," (Docket No. 19 at 24), inasmuch as such an interpretation would require ignoring the "including, but not limited to" language.

Further, to the extent, if any, that the collateral description is ambiguous, under the UCC's "notice filing" system, the filing of a financial statement is intended to provide notice "merely that a person *may* have a security interest in the collateral indicated. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." N.Y. U.C.C. § 9-502 cmt. 2 (emphasis added). Thus, courts interpreting this provision of the UCC have recognized that:

> Where a description can reasonably be interpreted in one of two ways-one of which may cover the collateral at issue and one of which does not-notice filing has served its purpose of alerting subsequent creditors to the possibility that a piece of collateral may be covered; the burden is then on the subsequent creditor to inquire further.

ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A., 558 F.3d 809, 814 (8th Cir. 2009); Manufacturers & Traders Trust Co. v. Brown, 75 B.R. 704, 705-06 (W.D.N.Y. 1987); see Matter of Tri-State Equip., Inc., 792 F.2d 967, 971 (10th Cir. 1986); In re Residential Capital, LLC, 497 B.R. 403, 418 n. 8 (Bankr. S.D.N.Y. 2013); In re Kelton Motors, Inc.,

117 B.R. 87, 94 (Bankr. D. Vt. 1990); see also First Bank v. E. Livestock Co., 837 F. Supp. 792, 799-800 (S.D. Miss. 1993) (collecting cases). Nonetheless, "[w]hile fanatical exactitude of description is not required, significant omissions or material disparities between the financing statement and security agreement[] that frustrate or forestall inquiry prevent lien perfection." In re I.A. Durbin, Inc., 46 B.R. 595, 599-600 (Bankr. S.D. Fla. 1985); see N.Y. U.C.C. § 9-506 (errors or omissions that make a financing statement "seriously misleading" will render the statement ineffective).

In Durbin, on which Plaintiff relies, the defendant had a security interest in, among other things, the debtor's proceeds from the closing of certain contracts. The financing statement, however, indicated that the covered collateral consisted of: "[a]ll property rights of any kind whatsoever, whether real, personal, mixed or otherwise, and whether tangible or intangible, *encumbered by the above-mentioned mortgage*..." 46 B.R. at 598 (emphasis altered). Because the specified mortgage made no reference to the collaterally assigned contract rights, the district court reasoned that "a third party stranger, such as a trustee in bankruptcy," would not be placed on notice of the possibility of a security interest in additional assets not listed, rendering the financing statement seriously misleading. Durbin, 46 B.R. at 600-01.

Accordingly, the financing statement in Durbin was found misleading not because it could "reasonably be interpreted in one of two ways," ProGrowth Bank, Inc., 558 F.3d at 814, but because it could be reasonably interpreted only in a way inconsistent with the scope of the actual security interest. No such problem exists here, where the use in Defendant's financing statement, not once, but twice, of the "including, but not limited to" language clearly informs a prospective creditor that the list of affected collateral was

non-exhaustive. The further reference to "together with any products and proceeds thereof" also alerts a third party to the possibility that Defendant's security interest continues even if the listed assets have been sold or otherwise converted. Thus, unlike Durbin, the financing statement prompts, rather than dissuades, further inquiry even if the third party misconstrues the reference to the Debtor's former location as modifying "[a]ll assets."

### III.   CONCLUSION

After *de novo* review of the parties' arguments regarding the sufficiency of Defendant's initial UCC financing statements, this Court agrees with the Bankruptcy Judge's conclusion that Defendant is entitled to a grant of judgment on the pleadings. The October 3, 2014 Decision and Order of the Honorable Michael J. Kaplan, Bankruptcy Judge, which granted Defendant's motion for judgment on the pleadings and denied Plaintiff's cross-motion for summary judgment, is therefore AFFIRMED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: November 24, 2015
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge